## GUITAR et al. v. RANDEL et al.

(Court of Civil Appeals of Texas. El Paso. April 25, 1912. Rehearing Denied May 22, 1912.)

1. APPEAL AND ERROR (§ 1052*)—REVIEW—HARMLESS ERROR.

The refusal of the trial court to strike out an unresponsive answer of a witness was harmless, where the same proof was elicited from other witnesses.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 4171–4177; Dec. Dig. § 1052.*]

2. EVIDENCE (§ 471*)—OPINION EVIDENCE—OFFICIAL CAPACITY.

In an action for the death of an employé, alleged to have been caused by the negligence of a master, testimony of a witness that the deceased was the manager of the defendant's cotton gin was improper, being the mere conclusion of the witness, where the witness' evidence disclosed that he did not know under what terms the deceased was employed, and

had only known him during a short time, when they were both repairing gins.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 2149–2185; Dec. Dig. § 471.*]

**3. EVIDENCE (§ 545*)—OPINION—NECESSITY OF PREDICATE.**

In an action for the death of a servant, the court properly refused to permit a witness to give his opinion on matters, where no predicate had been laid to show that the witness was competent or qualified so to do.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 2360–2362; Dec. Dig. § 545.*]

**4. APPEAL AND ERROR (§ 1052*)—REVIEW—HARMLESS ERROR.**

Possible error in refusing to permit the introduction of opinion evidence, in an action for the death of an employé, was rendered harmless by the introduction of testimony of other witnesses, who were qualified to answer, on the same matter.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 4171–4177; Dec. Dig. § 1052.*]

**5. APPEAL AND ERROR (§ 1060*)—REVIEW—HARMLESS ERROR.**

Improper statements in the argument of counsel, in an action for the death of a servant, will not constitute ground for reversal, where it is apparent to the court on appeal that the jury was not influenced thereby.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. § 4135; Dec. Dig. § 1060.*]

**6. MASTER AND SERVANT (§ 278*)—INJURIES TO SERVANT—ACTIONS—EVIDENCE.**

In an action for the death of a servant from the bursting of a wheel, alleged to have been negligently allowed to remain in an unsafe condition, evidence *held* to sustain a verdict for the plaintiff.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 954, 956–958, 960–969, 971, 972, 977; Dec. Dig. § 278.*]

**7. MASTER AND SERVANT (§ 234*)—INJURIES TO SERVANT—DEATH OF SERVANT—CONTRIBUTORY NEGLIGENCE — DANGEROUS APPLIANCES—PROMISE TO REPAIR.**

Though, while a person was manager and in control of a cotton gin, a wheel or pulley became weak or out of repair, he was not guilty of contributory negligence, which would preclude a recovery for his death, caused by the bursting of a wheel, where he had reported the condition of the wheel to the master, and there had been a promise to repair.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 684–686, 706–709; Dec. Dig. § 234.*]

**8. TRIAL (§ 260*)—INSTRUCTIONS—INCLUSION IN GENERAL CHARGE.**

In an action for the death of an employé, caused by the negligence of the employer in failing to provide safe appliances, a requested instruction submitting contributory negligence of the deceased was properly refused, where the general charge fairly presented the issues which it raised.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 651–659; Dec. Dig. § 260.*]

**9. NEGLIGENCE (§ 4*)—"ORDINARY CARE"—"ORDINARY SKILL" — "ORDINARY DILIGENCE."**

The terms "ordinary care," "ordinary skill," and "ordinary diligence" contemplate that degree of care, skill, and diligence, re-

spectively, that an ordinarily prudent person would use in the transaction of his own business under like or similar circumstances.

[Ed. Note.—For other cases, see Negligence, Cent. Dig. § 6; Dec. Dig. § 4.*

For other definitions, see Words and Phrases, vol. 6, pp. 5029–5044, 5050; vol. 8, pp. 7739–7740.]

**10. MASTER AND SERVANT (§ 293*)—INJURIES TO SERVANT—ACTIONS—INSTRUCTIONS.**

The terms "ordinary care," "ordinary skill," and "ordinary diligence" are generally used as convertible terms; and an instruction so using them, in an action for the death of a servant from the negligence of a master, could not have misled, and was properly given, where the court previously defined the terms as that "degree of care, skill, and diligence, respectively, that an ordinarily prudent person would use in the transaction of his own business under like or similar circumstances."

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 1148, 1156, 1158–1160; Dec. Dig. § 293.*]

**11. TRIAL (§ 296*)—INSTRUCTIONS.**

In an action for the death of a servant from the negligence of the master in failing to provide a proper appliance, an instruction on the assumption of risk arising from defective appliances was properly given, where, when considered in connection with the other portions of the charge, it could not mislead.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 705–713, 715, 716, 718; Dec. Dig. § 296.*]

**12. MASTER AND SERVANT (§§ 101, 102*)—INJURIES TO SERVANT—NEGLIGENCE OF MASTER—PROVIDING PROPER APPLIANCES.**

A failure of owners and operators of cotton gins to provide suitable and reasonably safe machinery, such as is commonly used by skilled and experienced ginmen for operating the same, is negligence which will support an action for the death of a servant injured thereby.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 135, 171, 174, 178–184, 192; Dec. Dig. §§ 101, 102.*]

**13. TRIAL (§ 295*)—INSTRUCTIONS.**

In an action for the death of an employé in a cotton gin by reason of the bursting of a flywheel, failure of an instruction on the duty of the master to provide safe machinery to state that the requirement was only to exercise ordinary care to furnish reasonably safe machinery would not render it improper, where, upon the entire charge, the jury could not have been misled as to the quantum of care required.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 703–717; Dec. Dig. § 295.*]

**14. MASTER AND SERVANT (§ 291*)—INJURIES TO SERVANT—ACTIONS—INSTRUCTIONS—SUPPORT IN EVIDENCE.**

In an action for the death of a servant, caused by the bursting of a flywheel, a charge that, though deceased was the superintendent of the establishment, with charge of the machinery, the master would not be relieved from liability for his injury, where there had been a promise to repair, was properly given, where there was evidence from which the jury might have found that such a promise was made.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 1133, 1134, 1136–1146; Dec. Dig. § 291.*]

**15. MASTER AND SERVANT (§ 289*)—INJURIES TO SERVANT — ACTIONS — QUESTIONS FOR JURY.**

In an action for the death of a servant from the bursting of a defective wheel, while,

*For other cases see same topic and section NUMBER in Dec. Dig. & Am. Dig. Key No. Series & Rep'r Indexes

the deceased was "training up" the machinery, whether the deceased was guilty of negligence in violating instructions in running an engine without putting belts on the pulleys *held*, under the evidence, a question for the jury.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 1089, 1092–1132; Dec. Dig. § 289.*]

Appeal from District Court, Taylor County; Thomas L. Blanton, Judge.

Action by Amanda Randel and others against John Guitar, Jr., and another. From a judgment for plaintiffs, defendant Continental Oil & Cotton Company appeals. Affirmed.

J. M. Wagstaff and Hardwicke & Hardwicke, all of Abilene, for appellant. Thomas & Chapman, of Anson, King & Isaacs, of Abilene, and Joe C. Randel, of Anson, for appellees.

McKENZIE, J. This is a personal injury suit brought by Amanda Randel, suing for herself and as next friend for Pearl Randel, against John Guitar, Jr., and the Continental Oil & Cotton Company to recover damages for the death of W. T. Randel. Amanda Randel is the wife and Pearl Randel is the minor daughter of W. T. Randel. On the trial, plaintiffs dismissed their action as to John Guitar, Jr. A trial, with a jury, resulted in a verdict and judgment for plaintiffs, from which the defendant Continental Oil & Cotton Company appeals.

It was alleged in the petition that defendants employed deceased to operate the engine which runs the cotton gin owned by it, situated at Noodle, in Jones county; that, while in the performance of his duties, the deceased fired up the engine that runs the gin, for the purpose of training up and filling the boiler with water, and while training the engine one of the wooden wheels attached to the main shaft broke, and a piece of it struck Randel, inflicting such injuries as to cause death. The wheel was about 30 inches in diameter, with wooden rim about 2½ inches thick and about 8 inches wide, held together by spokes glued into the wood. The rim was in two sections, which sections were held together with iron couplings, which had, by wear and tear and usage, become loosened, unsafe, and very dangerous. At the time the wheel broke, no belt was on it. It was further alleged that the defects in the wheel were unknown to deceased at the time of accident; that defendant did know of such defects, or by the use or ordinary care, could have known; that by reason of the unsafe condition of the wheel, which was known to defendant and unknown to said Randel, and because defendant failed to provide deceased with safe machinery and to make repair of said wheel, and to provide a sufficiently safe wheel, defendant was guilty of negligence,

which negligence was the direct and proximate cause of the accident and of Randel's death.

The defendant answered by general demurrer, general denial, and specially pleaded contributory negligence and assumed risk. Specially stating the defenses, defendants' answer charges in substance: (1) Plaintiff should not recover, because Randel was manager and had full charge and supervision of the gin, and it was his duty to know, and he did know, the condition of said gin; that if injury occurred it was due to his carelessness, and was not the fault of defendant. (2) That Randel had been warned not to operate the gin under steam pressure without first putting the belts on the wheels or pulleys, but, disregarding the warning, he negligently and carelessly put the machinery in operation without first placing the belts on the wheels or pulleys, caused said wheel or pulley to revolve with great speed and to burst, which would not have occurred but for his failure to heed said warning; and that the injury was caused by Randel's negligence. (3) If said wheel was defective, then the defect was latent and not patent; and the duty rested upon Randel to discover and repair any defects, as he was sole manager in charge and supervision of said gin. (4) Randel was guilty of contributory negligence in the way and manner of starting the gin and applying the steam.

The plaintiffs, by supplemental petition, denied the allegations set out in defendants' answer, and specially answered that if said Randel had any knowledge of the defective condition of the wheel which broke, which knowledge is not admitted, but denied, then they aver and say that the defendant promised said Randel to safely repair said gin and machinery, and so relying on said promise he went to work; and while so engaged in the performance of his duties the accident occurred which caused his death.

[1] The first assignment of error complains of the action of the trial court in refusing to suppress the answer of the witness Phifer to an interrogatory, on the ground that the answer was not responsive. We are of the opinion that the answer is responsive; and, too, we find from an examination of the evidence that the same proof was elicited from other witnesses, and we think that the error, if any, was made harmless.

[2] The second assignment of error complains because the court refused to permit defendants to introduce in evidence the question and answer of the deposition of the witness Phifer as to who was the manager of the gin at the time Randel was hurt; the witness answering that Randel was manager. The deposition of the witness discloses the fact that he did not know under what terms Randel was employed, had only known Randel a short time, when they

both were repairing gins; and it is apparent from his testimony that the answer given was a conclusion or an opinion. Defendants' witnesses Guitar and Johnson, who were in a better position to know, testified that Randel was manager of the gin. We are of the opinion that the court did not err in excluding the testimony.

[3, 4] We overrule appellants' third assignment of error, because the question asked the witness Phifer calls for an expert opinion; and at the time when witness was asked for the opinion no predicate had been laid to show that he was competent or qualified as an expert. The same evidence, too, was elicited from other witnesses who were qualified to answer; and we are of the opinion that, if any error was committed by the court, same was thereby made harmless.

[5] The fourth assignment of error, which complains of a statement made in argument to the jury by counsel for plaintiff, is overruled. We are of the opinion, however, that the statement was highly improper, unfair, and should not have been allowed; yet we do not believe that the jury was influenced thereby, and that the error is not such as to authorize reversing the case. ·

[6] The fifth assignment of error, which complains of the court's refusal, at the request of the defendants, to peremptorily instruct the jury to find a verdict for it, raises the issue as to the sufficiency of the evidence to submit to the jury the several issues involved in the case. In order to properly consider this assignment, and that an understanding might be had of our ruling, we will set out at some length the evidence.

The defendant company owned several cotton gins in Taylor and Jones counties, one of which was the Noodle, or Crossroads, gin, and employed W. T. Randel to operate the last-named gin for the ginning season commencing in the fall of 1909. At the time of the accident, one Phifer was the only other employé at work at the gin; the evidence showing that he was employed by the defendant company as fireman of the engine. The Noodle gin had not been operated since the end of the 1908 ginning season, and had been idle from about January 31, 1909, until the day of the accident. At the time of the accident, Randel and Phifer had just fired up the engine, and had been pumping water, when Randel undertook to speed or train the engine to get it in working order. The testimony shows that this was the first time said engine was fired up for the season; and that, while speeding or training the engine, a wooden wheel or pulley, which was attached to the line shaft, burst or broke, a piece of which struck Randel, causing his death. Several wheels or pulleys were fixed to the line shaft; one was used for the main drive belt, four were used to operate the gin stands and the one which broke and caused the accident was used to operate the suction fan. The line shaft was located a couple of feet from the roof of the building, 12 or 14 feet above the floor where Randel was at work, and where was located the engine. At the time of the accident, the main drive belt was connected with the wheel or pulley on the line shaft; and this belt was used to operate the line shaft, which, in turn, caused the other pulleys or wheels ·to revolve. No belts were on the suction fan wheel or the gin stand wheels; and the only pulley breaking was the one which operated the suction fan. There is conflict in the testimony as to the condition of the pulley or wheel when it broke, as to whether it was safe or unsafe, as to whether it was in good repair or bad repair. The witness Phifer, who was the fireman at the time of the accident, testified that he. did not examine the pulley or wheel before Randel was hurt, although he was employed under a Mr. Conley in putting the gin in proper repair for the ginning season, but that he did not examine or repair said pulley. After the accident, however, when he cased the wheel up and sent it in to the company, he noticed that there were some screws missing in the pulley, which made the pulley weak and unfit for service to a certain extent, especially without a belt.

Dr. Williams, a witness in the case, in describing the piece of the wheel which struck Randel, testified: "This piece of pulley will weigh 10 pounds. It is composed of pieces of wood sawed in an oval shape to make a wheel. It is about 12 inches long, 7 inches in width. These pieces are about an inch and an eighth over; there are seven of them. It is about two inches and a half thick, connected together at one end, with two connections made of iron fastened· to the pieces, or held by screws. At the other end are fragments of broken pieces, with the pegs at the connections, with cotton or grease between the connections. There is dust on the pegs. The eyelets in the iron casting are filled with dust and dirt and rust." He further testified that it was in the same condition as at the time of the accident; that the machinery was old when it was installed, and it had been in operation for several years; and that the pulley or wheel that broke was old. There was other testimony to the effect that the wheel was not in good repair or condition. The wheel in its broken parts was introduced in evidence, and the jury had it before them for.examination. There was testimony that Randel was employed by the defendant company to manage the gin, with full charge and control thereof; and that it was his duty to repair and keep it in repair. Other testimony, however, is to the effect that defendant promised to make repairs before Randel was to take charge.

The father of W. T. Randel, being a witness, testified that about the 7th of August, in his presence, Fred Guitar, who was district manager of the defendant company, approached his son to employ him to run the Noodle gin for the 1909 ginning season. "My son said to Mr. Guitar that the Noodle gin was in bad shape. Mr. Guitar says he will have it put in good shape." This statement attributed to Guitar was denied by him; but Guitar testifies that he had a conversation in the presence of deceased's father, which conversation was in effect that deceased, Randel, requested of him that he be permitted to repair the gin. After several conversations, it appears that Randel was employed, the employment taking place near the middle of the month of August; but, instead of Randel going to work on the Noodle gin, he went to work assisting Conley in repairing the gins at Merkel and Shiloh. Conley was foreman of the repair crew. After repairing the Merkel and Shiloh gins, it appears that the repair crew went to the Noodle gin and made repairs on that gin. The evidence shows that Randel was not present all the time while the repairs were being made on the different gins, and the testimony is conflicting as to whether Randel was present at any time when the repairs were being made at the Noodle gin; and Dr. Williams testified: "Just prior to the accident, Randel said that he was not going to run the gin without Fred fixing it up; and it was while Randel had just fired up, was pumping water, was training the engine or machinery, when the accident occurred."

Conley testified that the repair crew went from the Shiloh gin to the Noodle gin; that the pulley had been gone over, and the nuts thereto had been tightened up; that "the boys that went over the pulley did not report anything out of order about the pulley that I heard of." The evidence shows that Conley did not make an inspection of the pulley himself. He further testifies: "They had fired up the engine and pumped some water before I left. When I went to leave, I said something to Mr. Randel with reference to training the machinery or anything of that sort. I told him when he went to train up to be sure and put on all the belts. * * * The purpose of putting on the belts in training up is to see that they all run right, and to keep anything from going wrong. After I made the remark I left the gin and went right off. I started off in a wagon." On cross-examination, he testified: "At the time I gave these instructions in regard to the use of the line shaft and the pulleys, with or without belts, I don't think I was in authority during that time. When I got ready to leave that day, I didn't say to Randel, 'You must not run this engine without all the belts on the line shaft,' I says to him: '* * * Before you start up,'

I says, 'if you start up to train up,' I says, 'be sure and put your belts all on.' He started the engine up and pumped water while I was there. He had one belt on then, the main drive belt, and the pump belt. He didn't have a belt on this particular pulley that bursted. I was present. We were not training up at that time. We were just pumping water. We were running the engine, though. I was not there at the time of the accident. * * * When I was there, the engine was being operated. We didn't start any of the machinery in the house. * * * What you mean by 'training up' is when you run the whole business, and see if it all works. He was running the engine that morning, pumping water. When you train the engine, you don't have to run the whole outfit."

The witness Smith, who had been in the gin business for 22 years in Abilene and qualified as an expert, testified: "I would not think that a wheel of that character, in good repair, that there would be any more danger in operating it without a belt than with a belt, as to the wheel coming apart. If it is a good wheel, in good repair, I don't think there is any difference in running the belt on it or without the belt. If it is in good repair and a good wheel, wooden wheel, constructed in the manner of wheels used for that purpose, I said I would not think there was any danger at all in running with or without a belt. We very often have one on the line shaft we are not using; just leave it on there and run it. In testing out an engine, we very often run and train them without any belts on the pulleys on the line shaft at all. These wheels, if properly constructed and in good repair, I don't think there is any danger whatever of them coming to pieces by their own weight. I have never had one to do it."

We have quoted at great length the evidence to make clear the issues raised; and it is our opinion that the evidence is sufficient to justify the court in submitting the case to the jury. On the material issues, the evidence is quite conflicting; and we are also of the opinion that the evidence is sufficient to sustain the verdict. The assignment of error is therefore overruled.

We also overruled the fifteenth and sixteenth assignments of error, which complain that the evidence is insufficient to sustain the verdict under the issues as made upon the trial of the case.

[7, 8] The sixth assignment of error complains of the trial court's failure to give special requested charge, as follows: "You are instructed that the law is that, if you find from the evidence that W. T. Randel was manager of the gin in question at the time he was hurt, and had been such manager during the latter part of 1908 and first of 1909, and that as such manager he had charge, control, or supervision of said gin

as an employé of defendant company, and if you further find that during the time he was such manager the wheel or pulley mentioned in the testimony became weak or out of repair or order, and that by reason thereof the same was caused to burst and fly to pieces, then plaintiffs cannot recover herein; for, if you find so, the law is that such condition of said wheel or pulley, if such was its condition, arose from the want of care on the part of deceased himself, and under such conditions his heirs can recover nothing." This charge is not a correct presentation of the law applicable to this case, because it ignores the issue of promise to repair; and we are of opinion, also, that the general charge, as given to the jury, fairly presents the issues as raised by the special instruction as refused. We therefore overrule the assignment of error.

[9] The seventh assignment of error complains of the following portion of the court's charge: "By the terms 'ordinary care,' 'ordinary skill,' and 'ordinary diligence,' as same may be used in this charge, is meant that degree of care, skill, and diligence, respectively, that an ordinarily prudent person would use in the transaction of his own business under like or similar circumstances." We are of the opinion that the definition of the respective terms, as contained in the charge, is substantially correct.

[10] The eighth assignment of error complains of the following portion of the court's charge: "Where the law requires a person to use ordinary care, skill, or diligence with respect to the conduct of his business as relating to the right of an employé, then any failure to use same would be negligence." This charge, when taken in connection with the definition of "ordinary care," "ordinary skill," and "ordinary diligence," could not mislead the jury. It has been held that the use of the term "reasonable care," instead of "ordinary care," in explaining to the jury the quantum of care to be exercised by a defendant to make rules and regulations for the protection of its employés, was not calculated to confuse and mislead the jury; that the phrases are often used as convertible terms, and are generally so understood. T. & N. O. Ry. Co. v. Walker, 125 S. W. 99. Likewise the terms "due care," "due diligence," and "ordinary care" are convertible terms, and mean the same thing. Western Union Tel. Co. v. Smith, 133 S. W. 1062. It would seem, therefore, that under the above holdings that the terms "ordinary care," "ordinary diligence," and "ordinary skill," when applied to a case involving negligence, where "ordinary care," "ordinary skill," and "ordinary diligence" are required of the owner of machinery, that such terms, under the restrictions of the definition, would also be convertible terms, and would be so understood by the jury. In the light of the preceding decisions, we hold that the charge is not er-

ror; and the assignment of error is overruled.

[11] The ninth assignment of error complains of the following portion of the court's charge: "The latent defects are such as may exist in machinery or appliances, but which are not discoverable by the exercise of ordinary care, but he does not assume such risks as may arise from the person employing him; for instance, such as may arise from defects in machinery which he is provided with by his employer, if such defects exist because of negligence of his employer." We think this portion of the charge, when considered in connection with the other portion of the charge as given to the jury, could not be misleading. The evidence shows that the wheel was 12 or 14 feet above the floor where the deceased was at work operating the engine; and, without deceased had made a personal inspection of the wheel, perhaps by going upon the line shaft and examining it minutely, the dangerous defects would not be revealed, although the defects, by a proper inspection, could have been discovered, as the evidence tended to show that there were some screws out of place, and that the braces were loose, and that the different parts of the wheel showed that cotton, grease, and dust had worked into the parts of the wheel which were out of repair. The court had also charged the jury upon contributory negligence and assumed risk. We therefore overrule this assignment of error.

[12, 13] The tenth assignment of error complains of the following portion of the court's charge: "It is the duty of those owning and operating gins to provide suitable and reasonably safe machinery for operating same, such kind and character of machinery as is commonly used by skilled and experienced ginmen, and such as they could, by the use of ordinary skill and diligence, provide; and a failure so to do and provide would be, in law, negligence." Under this assignment of error, appellants contend: (1) That the charge places the absolute duty on defendant to provide suitable and reasonably safe machinery; whereas the law only requires ordinary care to provide suitable and reasonably safe machinery; (2) the charge required defendant to provide such machinery as is commonly used by skilled and experienced ginmen; whereas the law only required defendant company to use ordinary care to provide reasonably safe machinery, and placed a higher degree of care than is required by law. While we do not approve of the charge as a whole, in that it is susceptible, we think, to criticism, in that it might be construed by the jury in requiring a greater degree of care than that which is required by law, yet, in view of the holding in the case of Trinity Co. Lbr. Co. v. Durham, 85 Tex. 56, and 19 S. W. 1012, in which a charge in substance identical with the charge in this case, was approved, we think it is incumbent on us to

overrule this assignment of error. We think it is well to state, however, that the trial courts can avoid error by charging the jury in terms of the well-established principles of law laid down in the text-books and decisions, which require only that the defendant use ordinary care to furnish reasonably safe machinery. We will further state, too, that, reading this portion of the charge in connection with the general charge, we do not believe that the jury could be misled as to the quantum of care which was required of the defendant company in the exercise of that duty, as to the character and kind of machinery it should use in its gin, and as to the care required of it in keeping said machinery in repair.

[14] The eleventh assignment of error complains of the following portion of the court's charge: "If you believe from the evidence that at the time of the injury, if any, the deceased, W. T. Randel, had the charge and management of the said Noodle gin and machinery therein contained, including the pulley or wheel which caused the accident, then, in such event, you would find for the defendant herein, unless you should further believe and find from a preponderance of the evidence herein that, prior to the accident, the defendant had promised the deceased to repair the defective machinery, and that the deceased relied upon such promise, and used the machinery, believing that the defendant had complied with the promise to repair, if any, and that he had no knowledge or notice that the defect had not been repaired, and that he was injured as a proximate result of such defect, and that the defendant was guilty of negligence with respect thereto, then, in such event, you would find for the plaintiff." This portion of the charge, when taken in connection with the general charge as given to the jury, is undoubtedly sufficient. We think that the evidence is sufficient to raise the issue,. which should be decided by the jury, that the defendant promised the deceased, Randel, to make repair of the machinery of the Noodle gin, and that Randel, before the commencement of his duties at said gin, had relied upon said promise; and the testimony further showing that he had just taken charge, had just fired up the engine, was pumping water and was in the act of training the engine, when the wheel or pulley broke. This we think sufficient to submit the issue to the jury; and we therefore overrule the assignment of error.

Appellants' twelfth and thirteenth assignments of error, which complain of certain portions of the court's charge, are overruled for the reasons as heretofore given. The questions involved are practically the same as under the preceding assignment, complaining of the charge of the court upon the degree of care required of defendant.

[15] The fourteenth assignment of error complains of the following portion of the court's charge: "If you find from the evidence that said W. T. Randel was cautioned by any representative of defendant as to probable danger of running the engine attached to the drive shaft without first putting the belts upon the pulleys, and that the said W. T. Randel was guilty of negligence in running said engine without so placing said belts on said pulleys, and that such negligence, if any, either proximately caused or contributed to his injury, then you would find for the defendant." Under this assignment, appellants contend: (1) If the defendant company, through its representative, instructed the deceased not to run the engine without first putting the belts upon the pulleys, and the deceased violated the instructions, he could not recover as a matter of law; and hence the charge of the court was error. (2) The charge of the court was error, in that it permitted the jury to pass upon the question as to whether or not the deceased was guilty of negligence in violating instructions from his employer. It will be seen from the evidence quoted that the witness Conley, as foreman of the repair crew, had just completed the repairing of the gin, and, while there present, the deceased had fired up the engine, was pumping water to fill the boiler, and at this time no belts had been placed upon the other wheels or pulleys on the line shaft, other than the main drive wheel. Also his testimony as to the warning given, in substance, had application only to the training of the entire gin machinery, and not to the training of the engine. It also appears from a reading of the testimony that the remark by Conley to the deceased to put on all the belts was in such general terms that it could not be construed as being applicable to any particular wheel or pulley; yet, during the process of operating the engine and the wheels on the line shaft, in pumping water for the engine, no warning or caution was given Randel to put on the belts. We also think that the testimony of the witness Smith, an experienced ginman of 22 years' practical experience in operating gins, was sufficient, when taken in connection with the other incidents surrounding the accident, to require the court to submit said issue to the jury. No complaint, it appears, is made as to the sufficiency of the charge.

Not finding any sufficient error which would require us to reverse and remand the case, we are of the opinion that the judgment of the lower court should be affirmed.

Affirmed.